UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Ken Walters and John Bonilla as Trustees of the Operating Engineers Health and Welfare Trust Fund, et al, <br><br> Plaintiffs, <br><br> v. <br><br> Terry E. Smith, an individual, Terry E. Smith, individually and dba Essayons, Inc., Essayons Inc., a California corporation, <br><br> Defendants. <br> _____/ | No. C-05-4209 WDB <br><br> ***ORDER FOR REASSIGNMENT* AND REPORT AND RECOMMENDATION RE MOTION FOR DEFAULT JUDGMENT** |

Plaintiffs are various fringe benefit trust funds established for the benefit of members of the Operating Engineers Local Union No. 3, and the trustees of those fringe benefit trust funds. *See*, Complaint, filed October 18, 2005. Defendant, Essayons Inc., is a corporation and is bound by a collective bargaining agreement and various trust agreements to make timely contributions to plaintiff trust funds for covered work performed by Essayons' employees.[1] Declaration of Wayne McBride in Support of Plaintiffs' Motion for Default Judgment, filed on May 19,

---

[1] It is unclear to us whether the proper spelling for the entity defendant is "Essayons" or "Essayon's." Plaintiffs' papers refer to Essayons, as does the California Secretary of State's website. However, at least some of the documents attached to plaintiffs' Motion and signed by defendant(s) use "Essayon's." We use "Essayons," the spelling consistent with the information reflected on the Secretary of State's website.

1

2006, ("McBride Decl.") at ¶4 and Ex. A-D.  Defendant Terry E. Smith is an individual and CEO and President of Essayons.  McBride Decl., at Ex. C and D; Plaintiffs' Response for Supplemental Information re Motion for Default Judgment, filed July 21, 2006 ("Supp. Brief") at 3; Clerk's Notice re Supplemental Submission by Plaintiffs at Hearing, filed September 1, 2006.

On October 18, 2005, plaintiffs filed a complaint against Essayons and Terry Smith seeking to collect unpaid contributions due to multi-employer benefit plans pursuant to the governing collective bargaining agreement.  See, Complaint for Breach of Contract, Damages, Breach of Fiduciary Duty and Audit.  Plaintiffs also ask the Court to compel defendants to comply with an audit as required by the collective bargaining agreement. *Id.*

Plaintiffs served defendants with a copy of the Complaint.  Summons and Proofs of Service, filed on February 1, 2006.  Defendants have not filed a response to the Complaint.

In response to plaintiffs' application for entry of default, the Clerk of the Court entered default as to Essayons, Inc., and Terry E. Smith on February 10, 2006.

On May 19, 2006, plaintiffs filed and served their motion for default judgment.  See, Motion for Default Judgment and Proof of Service ("Motion").

On June 14, 2006, this Court invited plaintiffs to submit supplemental briefing in connection with several issues presented by their Motion.  See, Order for Supplemental Information re Motion for Default Judgment.  On June 30, 2006, plaintiffs asked for additional time in which to respond to the Court's invitation.

On July 21, 2006, plaintiffs filed their supplemental submissions.  Although plaintiffs served defendants with the Court's June 14th Order and with plaintiffs' July 21st submission, defendants filed no response.  Certificates of Service, filed

June 15, 2006, June 30, 2006, July 19, 2006; Supp. Brief and supporting declarations, filed July 21, 2006.

On August 30, 2006, this Court conducted a hearing in connection with plaintiffs' Motion. No appearance was made on defendants' behalf.

In their Motion, plaintiffs seek a judgment against Essayons (as an entity) and Terry Smith, individually, in the amount $248,935.34 to recover unpaid contributions, liquidated damages, interest, attorneys' fees and costs.[2] McBride Decl., at ¶¶13-14; Harlan Decl., at ¶¶4-7; Supp. Brief at 4-5. Plaintiffs also seek an order compelling defendants to submit to an audit of defendants' payroll records, and to pay all additional amounts deemed owing by the auditor. Complaint at 6; Supp. Brief at 2-3.

Because defendants have not appeared in this action, this Court has not secured consent as required by 28 U.S.C. §636(c). Accordingly, we make the following Report and Recommendation and ORDER the Clerk of the Court to randomly reassign this action to a District Judge.

## I.  **Entitlement to Entry of Default Judgment**

Plaintiffs seek entry of judgment by default against the entity Essayons, Inc., as well as against Terry E. Smith, individually.

Plaintiffs served defendants with their motion for default judgment. See, Proof of Service, attached to Motion, filed on May 19, 2006.

---

[2] We note that there are multiple errors in plaintiffs' math. *E.g.*, Motion at 6-7 and compare McBride Decl., at ¶13 with Supp. Brief at 5:12. We arrived at this sum by totaling the following amounts: (1) unpaid contributions ($102,402.35), liquidated damages ($14,933.89) and interest ($22,443.44) for the first period, (2) unpaid contributions ($47,709.46), liquidated damages ($40,677.90) and interest ($16,370.80) for the second period, and (3) attorneys fees incurred through July 20th ($3,937.50), costs ($235.00), and 1 hour of fees for appearing at the hearing ($225.00). See, McBride Decl., at ¶¶13-15 and Harlan Decl., at ¶¶4-7; Supplemental Declaration of Bruce A. Harland in Support of Plaintiffs' Motion for Default Judgment, filed July 21, 2006, ("Supp. Harland Decl.") at ¶3-5.

Essayons Inc., has failed to respond to the Complaint or otherwise to appear in the proceedings, and the Clerk of the Court entered default as to this defendant.

Plaintiffs also claim that Mr. Smith is liable as an "employer" -- contending that he and the business are one and the same. Complaint at 2. In support of this contention plaintiffs submitted various records from the California Contractors State License Board. See, Transcript August 30, 2006 hearing. These records support findings that Essayons and Mr. Smith both hold contractors' licenses to perform the same type of work ("general engineering contractor" and "hazardous substances removal"), that Mr. Smith's license is currently "inactive," that Mr. Smith is one of only two personnel currently listed under Essayons' license, and that Mr. Smith is the President, CEO and "Responsible Managing Officer" of Essayons. See, Clerk's Notice re Supplemental Submission by Plaintiffs at Hearing, filed September 1, 2006.

Mr. Smith has failed to respond to the Complaint or otherwise to appear in the proceedings, and the Clerk of the Court entered default as to Mr. Smith. By not responding to the Complaint, Terry Smith has conceded that plaintiffs' allegations are true and thus admits that he is an "employer" under ERISA. Moreover, plaintiffs have presented evidence that could support an inference that Mr. Smith is operating his contracting business under Essayons' license.

Plaintiffs also seek to hold Mr. Smith personally liable as a "fiduciary." Complaint, at 5. Because we recommend that the District Court deem admitted the allegation that Mr. Smith is an "employer" within ERISA, we need not address additional avenues for imposing personal liability.[3]

---

[3] Plaintiffs seek to hold both defendants liable as "fiduciaries." Complaint at 5. We note that it is not clear that defendants can be considered fiduciaries. Plaintiffs contend that defendants are fiduciaries because they exercised control over "plan assets." Complaint at 5-6. Ninth Circuit case law indicates, however, that employer contributions do not become "plan assets" until they are paid over to the Trust. *Cline v. Industrial Maintenance Engineering & Contracting Co*, 200 F.3d 1223, 1234 (9th Cir. 2000).

Some courts hold that the parties can render employer contributions "plan assets" from

4

Given defendants' complete failure to appear and the significant risk of prejudice to the employee beneficiaries of the fringe benefit trusts when an employer fails to make the required contributions, the sufficiency of plaintiffs' complaint, and the apparent merit of plaintiffs' substantive claims, we RECOMMEND that the District Judge to whom this case is reassigned find that plaintiffs are entitled to judgment by default against Essayons Inc., and Terry E. Smith, individually.  See, F.R.C.P. 55(b); *Eitel v. McCool*, 782 F.2d 1470 (9th Cir. 1986).

## II. Specific Items of Relief Sought by Plaintiffs

Section 1132(g)(2) of ERISA provides that in an action for delinquent contributions

> in which a judgment in favor of the plan is awarded the court *shall* award the plan --
> (A)  the unpaid contributions,
> (B)  interest on the unpaid contributions,
> (C)  an amount equal to . . . (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent . . . of the amount determined by the court under subparagraph (A),
> (D)  reasonable attorneys' fees and costs of the action . . ., and
> (E)  such other legal or equitable relief as the court deems appropriate.
>
> For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan . . ..

29 U.S.C. §1132(g)(2) emphasis added.

---

the moment due as a matter of contract. *Trustees of the So. Cal. Pipe Trades Health and Welfare Trust Fund v. Temecula Mechanical, Inc.*, 2006 WL 1991749 (C.D. Cal.); *Trustees of the Nat'l Elevator Indus. Pension v. Lutyk*, 140 F.Supp.2d 407 (E.D. PA 2001). Even if the Ninth Circuit were to accept this view, plaintiffs have pointed to no language in the governing agreements that supports such a finding.
   Additionally, even if the governing agreements did render employer contributions "plan assets" from the moment due, plaintiffs have not presented authority for the position that a mere delinquency in payment by an employer amounts to "exercising . . . control" over plan assets for purposes of 29 U.S.C. §1002(21)(a) (defining plan fiduciary).  See, *Chicago Dist. Council of Carpenters Pension Fund v. Angulo*, 150 F.Supp.2d 976 (N.D. Ill. 2001), ("[t]his Court cannot credit the notion that every delinquent employer's nonpayment of a contribution equates to its exercising its control over the 'disposition' of a plan's assets, so as to impose fiduciary liability by reason of the nonpayment."); *Lutyk*, 140 F.Supp.2d 407 ("there is no general rule conferring fiduciary status merely on the basis of delinquent employer contributions").

### A. Unpaid contributions

Plaintiffs seek unpaid contributions owing pursuant to the governing collective bargaining and trust agreements for work performed during two periods: (1) January 1, 1998, through June 30, 2000, and (2) October 2001, through August 2005.[4] McBride Decl., at 4-5; Supp. Brief at 3-4.

Unpaid contributions pertaining to these periods relate to work performed under the Independent Northern California Construction Agreement ("Independent Agreement" ). McBride at ¶¶4 and 13-14. The Independent Agreement incorporates by reference the Master Agreement which incorporates applicable Trust Agreements. McBride Decl., at ¶4, Ex. C. By becoming signatories to the Independent Agreement employers agree to be bound by the terms of the Trust Agreements. *Id*. The collective bargaining agreement and Trust Agreements govern employer contributions to the various employee fringe benefit trust funds and obligate employers to pay specified amounts into employee benefit funds on behalf of their employees who perform covered work. *Id*. Defendants became signatories to the Independent Agreement on May 1, 1997. McBride Decl., at Ex. C.

Defendants have not invoked the procedures that would release them from their obligations under these agreements. See, Transcript August 30, 2006, hearing. Accordingly, Essayons and Mr. Smith are obligated to pay contributions for covered work performed by Essayons' employees pursuant to the Independent Agreement for the periods January 1, 1998, through June 30, 2000, and October 2001 through August 2005. *Id.*

---

[4] Plaintiffs originally also sought relief under an agreement referred to as the "Materials Agreement," including contributions, liquidated damages and interest for the period January 2004 to June 2005. They have now withdrawn this portion of their request. See, Supp. Brief at 3-4.

6

Plaintiffs seek unpaid contributions for these two periods in the amount $150,111.81.[5]  McBride Decl., at ¶13-14.

Because plaintiffs' request for unpaid contributions is supported by the evidence, we RECOMMEND that the District Court enter judgment against defendants in the amount $150,111.81 for unpaid contributions for the periods January 1, 1998, through June 30, 2000, and October 2001 through August 2005.

## B.  Liquidated Damages and Interest

Plaintiffs seek liquidated damages and interest relating to the above unpaid contributions.  Motion at 2 and 5; Supp. Brief at 5; McBride Decl., at ¶¶7-8.

### 1.  Liquidated Damages

Plaintiffs seek liquidated damages for each of the two relevant periods at the contract rate of $35.00 per delinquent contribution or 15% of the amount of the contribution due to each separate Trust Fund, whichever is greater.  McBride Decl., at ¶7 and Ex. B.

ERISA compels the court to award plaintiffs "liquidated damages provided for under the plan in an amount not in excess of 20 percent . . . of the amount determined by the court [as unpaid contributions]."  29 U.S.C. §1132(g)(2)(C)(ii).  Liquidated damages are "mandatory and not discretionary" if "the following three requirements [are] satisfied: (1) the employer must be delinquent at the time the action is filed; (2) the district court must enter a judgment against the employer; and (3) the plan must provide for such an award."  *Northwest Administrators, Inc., v. Albertson's Inc.,* 104 F.3d 253 (9th Cir. 1996) citing *Idaho Plumbers & Pipefitters v. United Mechanical Contractors, Inc.,* 875 F.2d 212 (9th Cir. 1989).

The collective bargaining agreement together with Trust Agreements provide for an award of liquidated damages on delinquent contributions at the rate

---

[5]$102, 402.35 (for first period) + $47,709.46 (for second period)

7

of $35.00 per delinquent contribution or 15% of the amount of the delinquent contribution due to each separate Trust Fund, whichever is greater. McBride Decl., at ¶7 and Ex. B. Therefore, plaintiffs have satisfied the third *Northwest* requirement.

As we understand it, the liquidated damages sought in connection with the period January 1998 to June 2000 pertain to contributions that were delinquent and unpaid as of October 18, 2005. Additionally, *some* of the liquidated damages for the period October 2001 to August 2005 pertain to contributions that were delinquent and unpaid as of October 18, 2005. If the District Court to whom this case is reassigned adopts our recommendation to enter judgment against defendants for unpaid contributions for the periods January 1, 1998, through June 30, 2000, and October 2001 through August 2005, then with respect to the delinquent contributions unpaid on October 18, 2005, plaintiffs will have satisfied the first and second requirements as well.

Therefore, we RECOMMEND that, if the District Court enters judgment against defendants for unpaid contributions that were delinquent and unpaid as of October 18, 2005, the Court also enter judgment for liquidated damages in connection with those contributions at the rate of $35.00 per delinquent contribution or 15% of the amount of the delinquent contribution due to each separate Trust Fund, whichever is greater.

It is also our understanding that some of the liquidated damages plaintiffs seek for the period October 2001 through August 2005 pertain to contributions that were late <u>but were paid</u> before October 18, 2005. See, Transcript August 30, 2006, hearing; McBride Decl., at Ex. F. With respect to contributions that were delinquent but were paid <u>before</u> plaintiffs filed this action, plaintiffs cannot satisfy the first requirement imposed by *Northwest Administrators*. *Board of Trustees v. Udovch*, 771 F.Supp. 1044 (N.D.Cal 1991); *Idaho Plumbers and Pipefitters Health and Welfare Fund v. United Mechanical Contractors, Inc.*, 875 F.2d 212

8

1. (9th Cir. 1989). Accordingly, plaintiffs would not be entitled to a mandatory award of liquidated damages under §1132(g)(2) of ERISA. *Id*. Plaintiffs might, however, be entitled to liquidated damages as a matter of contract. *Idaho Plumbers*, 875 F.2d at 217 (§1132(g)(2) does not preempt the federal common law of liquidated damages when that section does not apply); *Udovch*, 771 F.Supp. at 1047.

A contractual "liquidated damages provision is enforceable in this setting, and not void as a penalty, only if (1) 'the harm caused by a breach [is] very difficult or impossible to estimate' and (2) the fixed amount is 'a reasonable forecast of just compensation for the harm caused.'" *Udovch*, 771 F.Supp. at 1048 *citing Idaho Plumbers*, 875 F.2d at 217.

Plaintiffs satisfy the first prong of the test. "When an employer is delinquent in paying contributions into a fringe benefit trust fund, the fund suffers some kinds of harms that are very difficult to gauge." *Udovch*, 771 F. Supp. at 1049.

When we address the second prong of the test, whether the fixed amount is "a reasonable forecast of just compensation for the harm caused," we focus on the "parties' intentions." *Udovch*, 771 F. Supp. at 1048. The negotiating parties "must make a good faith attempt to set an amount equivalent to the damages they anticipate." *Idaho Plumbers*, 875 F.2d at 217. For the reasons explained in *Udovch* we focus "on the character of the process that led, at the time the contract language was drafted, to the fixing of the liquidated damages figures or formulas." 771 F.Supp. at 1048. We look for evidence that "the drafters made a good faith effort to determine that there would be a rational relationship between the damages that would be paid under the clause and the harms that would be suffered *in most of the situations that were reasonably foreseeable*." 771 F. Supp. at 1049 (emphasis in original).

Plaintiffs have directed us to evidence (unrebutted as a result of default) that supports an inference that the negotiating parties contemplated this issue and made a good faith effort to establish a liquidated damages rate that would be a reasonable forecast of just compensation for the anticipated harms. McBride Decl., at ¶7 and Ex. B (Master Agreement at 12.13.00).

Accordingly, we also RECOMMEND that the District Court enter judgment for plaintiffs for liquidated damages with respect to those contributions that were delinquent <u>but were paid</u> <u>before</u> October 18, 2005, at the rate of $35.00 per delinquent contribution or 15% of the amount of the delinquent contribution due to each separate Trust Fund, whichever is greater.

Because we recommend that the District Court award statutory <u>and</u> contractual liquidated damages at the same rates we do not require plaintiffs to provide separate totals for each type of award. The evidence supports a finding that the total amount of liquidated damages known to be owing for the periods January 1, 1998, through June 30, 2000, and October 2001 through August 2005 is $55,611.79. McBride Decl., at ¶¶13-14; Supp. Brief at 5. Therefore, we RECOMMEND that the District Court enter judgment for liquidated damages in the amount $55,611.79.

### 2. <u>Interest</u>

If the Court enters judgment in plaintiffs' favor for unpaid contributions, ERISA requires the Court to award plaintiffs "interest on the unpaid contributions." 29 U.S.C. §1132(g)(2)(B). ERISA provides that "interest on unpaid contributions shall be determined by using the rate provided under the plan." 29 U.S.C. §1132(g)(2).

Plaintiffs seek interest on the unpaid contributions at the annual rate of 12%. McBride Decl., at ¶8. Plaintiffs have submitted evidence that supports a

finding that 12% is the applicable interest rate under the Trust Agreements. McBride Decl., at Ex. B.

Plaintiffs seek interest in the amount $22,443.44 for the period January 1, 1998, through June 30, 2000, and seek interest in the amount $16,370.80 for the period October 2001 through August 2005. McBride Decl., at ¶¶13-14; Supp. Brief at 5. Interest for the first period has been calculated per year for the years 1998, 1999, and 2000. Complaint at Ex. D; Transcript August 30, 2006, hearing. Interest for the second period runs through May 2005. See, Transcript August 30, 2006, hearing; McBride Decl., at Ex. F. After completion of an audit that will disclose whether defendants owe additional amounts for the period from July 1, 2000, through the present, plaintiffs intend to seek amendment of the judgment to reflect additional interest through the date of the judgment. See, Transcript August 30, 2006, hearing.

We RECOMMEND that the District Judge grant plaintiffs' request for a judgment that includes interest at the rate of 12% on the delinquent contributions for January 1, 1998, through June 30, 2000, and October 2001 through August 2005, in the amount $38,814.24. As stated in section C below, we also recommend that the District Court permit plaintiffs to move the Court to amend the judgment after the auditor has assessed the full extent of defendants' debt.

### C. Request for Audit, Production of Monthly Reports, and Amounts Owing at Conclusion of Audit

The collective bargaining agreement to which defendants are signatories governs employer contributions to the various employee fringe benefit trust funds and obligates the employer to submit monthly reports documenting the number of hours worked by covered employees together with the monthly payments indicated as owing by each month's report. *E.g.*, McBride Decl., at ¶¶11 and 14 and Ex. B at 12.01.00. The governing Trust Agreements also obligate the employer to

submit to an audit of its records for the purpose of determining whether the employer has paid the appropriate amount of contributions to the trusts. Supplemental Declaration of Wayne E. McBride in Support of Default Judgment, filed July 21, 2006, ("Supp. McBride Decl.") at ¶4.

Plaintiffs previously conducted an audit for the period through June 30, 2000. McBride Decl., at ¶12.[6] Plaintiffs seek an order compelling defendants to submit to an audit for the period from July 1, 2000, through the present. Supp. Brief at 2-3.

Section 1132 of ERISA authorizes the Court to award "such legal and equitable relief as the court deems appropriate." 29 U.S.C. §1132(g)(2)(E). As a result of defendants' failure to submit complete and timely reports as contemplated by the governing agreements, plaintiffs have been unable to verify the full extent of defendants' obligations for the period since July 1, 2000. Accordingly, we RECOMMEND that the District Court to whom this action is assigned enter judgment compelling defendants to submit to an audit for the purpose of determining the full amount of fringe benefit contributions, liquidated damages and interest owed for the period July 1, 2000, through the present, and that the District Court order defendants to provide relevant records requested by the auditor.

Plaintiffs represent that the audit procedures followed by plaintiffs include an opportunity for defendants to discuss their records with the auditor and to present comments and/or objections within the auditor's report to the Trustees. Supp. McBride Decl., at Ex. A. In addition, the court has directed plaintiffs to provide defendants with an opportunity to provide input directly to the Trustees in response to the auditor's report before the Trustees make their final assessment of

---

[6] Mr. McBride's declaration states that this audit was conducted in August 2005. Plaintiffs' counsel stated that this date was an error and that the prior audit was completed approximately May 2001. See, Transcript August 30, 2006, hearing.

the amount owing. See, Transcript August 30, 2006 hearing. Plaintiffs' counsel agreed to do so. *Id.*

Plaintiffs also ask the Court to retain jurisdiction so that following the audit plaintiffs may move to amend the judgment to include additional damages, if any, found owing as a result of the audit.

Because it appears that plaintiffs' practice provides defendants with an opportunity to present challenges to the accuracy of the audit to the Trustees, we RECOMMEND that the District Judge permit plaintiffs to apply to the Court to amend the judgment to include all sums revealed as due and owing by the audit -- on the condition that defendants are given sufficient notice of the pendency of any court proceedings and a fair opportunity to challenge the accuracy of the audit before the District Judge.[7]

//
//
//

---

[7] This recommendation is not contrary to *Int'l Union of Operating Engineers, v. Karr*, 994 F.2d 1426 (9th Cir. 1993). In *Karr* the Trusts filed two separate lawsuits to recover delinquent contributions, liquidated damages and interest for different periods. Defendant Karr appeared in those actions. In the first action, the trial court granted the Trusts' motion to compel an audit, but the Trusts never conducted the audit. Instead, the parties settled both actions. Specifically, Karr agreed to pay specified amounts in exchange for the Trusts dismissing the lawsuits. Neither settlement contained a reservation of right to bring an action for additional payments found owing by any subsequent audit of the relevant periods.
The Trusts later sought an audit, and when Karr refused, the Trusts filed <u>a third action</u> to compel an audit and collect amounts found owing. In this third action, the Trusts sought to audit a period that included months that had been the subjects of the prior settlements. The court dismissed the third action as a matter of *res judicata* because the request for an audit was subsumed in the settled first action and should have been brought in the settled second action. The Court states, "the Trusts could have brought their claim to *compel* an audit and to recover underpaid contributions found by the audit in the same action as their prior claims for delinquent payments." 994 F.2d at 1430 (emphasis in original).
The facts before us are distinguishable from those in *Karr*. In this case, the Trusts have filed <u>one action</u> seeking a judgment for damages currently known to be owing as well as an audit of the relevant period to more accurately assess the delinquencies. Defendants have <u>not</u> appeared, and there is <u>no settlement</u> regarding the amounts owed for this period. The Trusts do not seek to file a new lawsuit. They ask the court to <u>retain jurisdiction</u> to *amend the judgment* to 'correct' the damages award in <u>this</u> lawsuit following the audit. It is within the Court's power to retain jurisdiction for the purpose of *amending* the judgment by default once an audit more accurately assesses the damages.

13

### D. Attorneys' Fees and Costs

Section 1132(g) of ERISA requires the Court to award plaintiffs "reasonable attorney's fees and costs of the action" when plaintiffs obtain a judgment in their favor or otherwise obtain the relief sought. 29 U.S.C. §1132(g)(2)(D); *Northwest Administrators*, 104 F.3d at 258.

Plaintiffs seek reimbursement of attorneys' fees and costs in the amount $4,172.50. Supp. Brief; Declaration of Bruce A. Harland in Support of Plaintiffs' Motion for Default Judgment, filed May 19, 2006, ("Harland Decl."); Supplemental Declaration of Bruce A. Harland in Support of Plaintiffs' Motion for Default Judgment, filed July 21, 2006, ("Supp. Harland Decl.").

#### 1. Tasks Performed and Number of Hours Spent on Those Tasks

Plaintiffs seek fees in connection with eighteen (18) hours expended drafting and filing the instant Motion, corresponding with the court, and responding to the issues raised in this court's invitation for supplemental briefing. See, Harland Decl., at ¶¶4 and 5; Supp. Harland Decl., at 3. Plaintiffs' initial request for fees also sought reimbursement of one (1) hour for fees incurred attending the August 30, 2006, hearing, but this request does not appear to be encompassed by the final request for fees. See, Harland Decl., at ¶5; Supp. Brief at 5:24; and Supp. Harland Decl., at ¶¶3-4.

As stated on the record, the court RECOMMENDS that the District Court disallow 1.5 hours for "6/29/06 -- Telephonic conference with Judge's clerk" because counsel's billing records were insufficient to support the claim made.

The court also RECOMMENDS that the District Court disallow .75 hours billed for "6/30/06 -- Review of file; legal strategy and review of correspondence to Court regarding continuance to request for further briefing." This request for continuance was made necessary by counsel's failure to properly calendar the

14

deadline for responding to the court's invitation for supplemental briefing. If counsel had properly calendared the deadline there would have been no need to seek the continuance.

The record indicates that counsel expended 10.5 hours responding to the court's invitation for supplemental briefing. Supp. Harland Decl., at ¶3. In our view, at least some of this time would not have been necessary had plaintiffs' original motion been properly supported. Moreover, in response to the court's inquiries, plaintiffs concluded that a portion of their request (the portion relating to the "Materials Agreement") was not appropriately sought. Supp. Brief at 3:15-24. Accordingly, some portion of the work expended drafting plaintiffs' <u>original</u> Motion was not reasonably undertaken. Counsel expended 5.25 hours drafting the original Motion. Supp. Harland Decl., at ¶3. Based on the total hours expended and our review of plaintiffs' original and supplemental submissions, the court RECOMMENDS that the District Court disallow 2.0 hours of the 15.75 hours expended on the original and supplemental submissions to adjust for "unnecessary" work conducted by counsel.

With respect to hours <u>other than</u> those just identified, we have reviewed counsel's billing records and RECOMMEND that the District Court find that the kinds of tasks performed by counsel were reasonably undertaken. We also RECOMMEND that the District Court find that counsel expended a reasonable number of hours completing those tasks.

Additionally, although plaintiffs failed to reiterate their request for reimbursement of one hour expended by counsel to attend the August 30, 2006, hearing, we take judicial notice of the fact that counsel did appear for the hearing which lasted almost one full hour (not including counsel's travel time). Therefore, we RECOMMEND that the District Court award 1.0 hour for counsel's appearance at the hearing.

Accordingly, the court RECOMMENDS that the District Court grant plaintiffs' request for reimbursement of attorneys' fees in connection with 14.75 hours.

### 2. **Hourly Rates**

Plaintiffs seek reimbursement of their attorneys' time at the rate of $225 per hour for Bruce A. Harland and Nicole M. Phillips. Supp. Harland Decl., at 2-3. Ms. Phillips represented that her law firm charges this client the same rate for all lawyers. See, Transcript August 30, 2006, hearing.

We have sufficient experience with local billing rates in these kinds of cases (as well as many others) to conclude that Ms. Phillips' billing rate is commensurate with the prevailing market rate in the Bay Area for lawyers of her skill and experience doing the kind of work these matters involved. We, therefore, RECOMMEND that the District Court approve reimbursement of her hours at the rate of $225.00 per hour. In contrast, it is our view that $225.00 per hour is high for an attorney of Mr. Harland's limited experience. Ms. Phillips indicated that Mr. Harland was responsible for the bulk of the work on this case, and our conclusion that the requested hourly rate for his work is too high is reinforced by the unusually high number of errors in plaintiffs' submissions. We RECOMMEND that the District Court approve reimbursement of Mr. Harland's hours at the reduced rate of $200.00 per hour.

### 3. **Costs**

Plaintiffs also seek costs in the amount of $235.00. Harland Decl., at ¶7; Supp. Harland Decl., at 5. These costs were incurred for "in-house" photocopies. *Id*. The cost of photocopies constitutes an out-of-pocket expense normally chargeable to the client. *Accord*, *Harris v. Marhoefer*, 24 F.3d 16 (9th Cir. 1994) (fee award under 42 U.S.C. §1988). Given the size of plaintiffs' motion and its

16

attachments we find that the amount plaintiffs request for photocopies is reasonable. See, Transcript August 30, 2006, hearing. We, therefore, RECOMMEND that the District Court grant plaintiffs' request for costs in the amount $235.00.

### 4.   Recommendation re Fees and Costs

We recommended that the District Court reimburse plaintiffs for 14.75 hours expended by counsel. We also recommended that Ms. Phillips' hours be reimbursed at the rate of $225.00 per hour and that Mr. Harland's hours be reimbursed at the rate of $200.00 per hour. Although the billing records do not identify the attorney who performed each task, Ms. Phillips represented to the court that Mr. Harland performed 75% of the work on this matter and she performed 25% of that work. Accordingly, we recommend that the District Court reimburse 75% of the 14.75 hours (11.06 hours) at the rate of $200.00 per hour and 25% of the 14.75 hours (3.69 hours) at the rate of $225.00 per hour. We also recommend that the District Court award costs in the amount $235.00.

For the reasons set forth above, if the District Court to whom this case is reassigned adopts this Court's recommendation to enter judgment in favor of plaintiffs on their claim for unpaid contributions, we RECOMMEND that the District Court award plaintiffs attorneys' fees and costs in the amount $3,277.25.

## III.   Conclusion

The court ORDERS the Clerk of the Court to randomly reassign this action to a District Judge.

We RECOMMEND that the District Judge to whom the Clerk reassigns this matter enter judgment in plaintiffs' favor and against the entity Essayons, Inc., and Terry E. Smith, individually, for unpaid contributions, liquidated damages, and interest for contributions due for work performed during the periods January 1,

1998, through June 30, 2000, and October 2001 through August 2005, as well as for attorneys' fees and costs, in the total amount $247,815.09.

We also RECOMMEND that the District Court enter an order compelling defendants Essayons and Terry Smith to submit to an audit for the period July 1, 2000, through the present and that the District Court enter an amended judgment for additional amounts found owing following an audit procedure in which defendants received notice of the auditor's findings and an opportunity to respond.

IT IS SO REPORTED AND RECOMMENDED.

Dated: September 8, 2006

/s/ Wayne D. Brazil
WAYNE D. BRAZIL
United States Magistrate Judge

Copies to:
Plaintiffs with direction to serve defendants,
wdb, stats, Clerk